UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SNAPMEDTECH, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br><br>3:22-CV-00780-OAW<br><br><br><br><br><br><br><br>SEPTEMBER 15, 2023 |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S
APPLICATION FOR PREJUDGMENT REMEDY**

Pursuant to Court's order dated August 18, 2023, Defendant SnapMedTech, Inc. ("SnapMed") hereby objects to Plaintiff National Liability & Fire Insurance Company's ("NL&F" or "Plaintiff") Application for Prejudgment Remedy dated August 11, 2023 (the "Application"). As set forth below, this Court should deny NL&F's motion for a prejudgment remedy as it cannot satisfy the standard necessary for an out-of-state defendant to bring assets into Connecticut. Moreover, NL&F fails to provide any reasonable evidence to support its damages claim.[1]

**1.0   FACTUAL BACKGROUND**

At its core, NL&F asserts a simple breach of contract claim against SnapMed based on SnapMed's alleged failure to pay premiums for workers compensation and employment liability insurance. In an effort to expand its claims beyond a simple breach of the various policies, NL&F claims SnapMed made misrepresentations in its January 2021 application

---

[1] In addition, SnapMed reserves the right to present evidence in opposition to the prejudgment remedy at the statutorily required hearing.

1

with NL&F. For example, NL&F alleges that SnapMed's estimation of its payroll provided in its application on January 28, 2021 (the "January Application") was false and inaccurate, and it should have known such information was inaccurate given the huge jump it had in its payroll between Q4 2020 and Q1 2021. *Id*. at ¶ 36. However, the January Application was issued before SnapMed could have known of any jump in its payroll in Q1 2021 since January 2021 was the beginning of Q1 2021.

Moreover, NL&F even recognizes in its Complaint that SnapMed's huge growth was the result of the onset of the COVID-19 pandemic that increased its payroll, and the amount of the premiums owed to NL&F. *See* Compl. at ¶¶ 9, 32-35. Apparently, SnapMed was somehow expected to have the clairvoyance to predict its payroll with better accuracy during the turbulent times of the first year of the pandemic.

Given the deficiencies in NL&F's misrepresentation claims and its claim alleging violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), SnapMed filed a motion to dismiss which motion remains pending. NL&F has now filed its Application, seeking prejudgment remedies to secure the sum of $4,981,294.01.

**2.0    LAW AND ARGUMENT**

    **2.1    This Court Should Cannot Attach Assets of the Non-Resident Defendant.**

SnapMed is a non-resident of Connecticut. It has no assets located in Connecticut. Accordingly, any prejudgment remedy this Court may grant will require SnapMed to bring assets into Connecticut to satisfy such an order. NL&F fails to provide any authority to require SnapMed to do so nor can NL&F satisfy the necessary standard to permit such action. Connecticut courts hold that "an order to attach foreign property requires the party seeking attachment to meet the criteria for a temporary injunction, instead of the lower

probable cause standard for a PJR." *MDJ Realty, LLC v. Premier Educ. Group G.P., Inc.*, Superior Court, Judicial District of New Haven, No. CV205049328S, 2021 WL 2182929, at *4 (Wilson, J., May 7, 2021). In reaching this conclusion finding, the *MDJ Realty* court relied on *Rhode Island Hospital Trust National Bank v. Trust*, 25 Conn. App. 285 (1991), explaining that *Rhode Island Hospital* "implicitly requires that a plaintiff must satisfy the injunctive relief standard for the court to order that out-of-state property be brought into Connecticut for purposes of attachment." *Id.* at 4.

As this Court is aware, in order to obtain an injunction, "a party must demonstrate: (1) that it is subject to irreparable harm; and (2) either (a) that it will likely succeed on the merits or (b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of hardships tips 'decidedly' in favor of the moving party ."*Constitution State Challenge v. Nyemcheck,* No. CIV A. 300CV650CFD, 2001 WL 640417, at *3 (D. Conn. June 1, 2001).

"'A showing of irreparable harm is the single most important prerequisite' for the issuance of a temporary restraining order." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 447 (D. Conn. 2020) *quoting Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118. "To satisfy the irreparable harm requirement, the [Plaintiff] must demonstrate that, absent a temporary restraining order, '[he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.' " *Id. quoting Faiveley*, 559 F.3d at 118. "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore*, 409 F.3d at 510.

Here, NL&F seeks money damages and no extraordinary circumstances exists. It therefore cannot satisfy the necessary standard to require SnapMed to bring assets into Connecticut in connection with NL&F's prejudgment remedy application. Accordingly, SnapMed respectfully requests that this Court deny the Application.

**2.2     NL&F Failed to Provide Evidence to Support its Claim for Damages**.

NL&F's damages claim is unsupported. Under Federal Rule of Civil Procedure 64(a), in a federal civil action, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." In turn, Local Rule of Civil Procedure 4(c) provides that such prejudgment remedies may be "secured as permitted by, and in accordance with, the law of the State of Connecticut."

Connecticut law provides that a court may grant a prejudgment remedy if it finds "probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought." Conn. Gen. Stat. § 52-578d(a).

Although our courts hold that "proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence," and that "probable cause is a flexible common-sense standard," *Hyde v. Beverly Hills Suites, LLC*, 265 F.R.D. 61, 63 (D. Conn. 2010), a party must still support an application for a prejudgment remedy by "*evidence* yielding a fair and reasonable estimate" of the applicant's damages. *SEI Fuel Services, Inc. v. A&J Gas & Convenience*, LLC, No. 3:18-CV-1553 (AWT), 2019 WL 6828431, at *2 (D. Conn. Dec. 13, 2019) (quoting *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 418, 421 (D. Conn. 2013)). Moreover, when considering a prejudgment remedy, a plaintiff is "bound to furnish proof of his damage with reasonable probability, and

not leave the trial court to speculation and conjecture." *Mullai v. Mullai,* 1 Conn. App. 93, 95, 468 A.2d 1240, 1242 (App.Ct.1983) (*per curiam* ). In addition, after a hearing, the Court must "consider not only the validity of the plaintiff's claim but also the amount that is being sought." *Calfee v. Usman,* 224 Conn. 29, 38, 616 A.2d 250 (1992) (citation omitted).

NL&F's Application fails to satisfy this standard, as it does not include any evidence supporting a fair and reasonable estimate of its damages. To the contrary, the Affidavit in support of its Application states in only the most cursory manner that NL&F, after conducting an audit, "determined that SnapMed owes it" an amount totally $4,528,449.10. (Affidavit, ¶¶ 36, 40, 45.) In merely stating that it "determined" that this amount is due, NL&F does not provide any evidence to support this claim or the basis for which it derived its figure, as required even under the relatively lenient standard of probable cause. There is no evidence to support this conclusory amount and no evidence or description of how Plaintiff arrived at this amount other than its own "determination." Because of NL&F's to provide "evidence yielding a fair and reasonable estimate" of its damages, its Application is inadequate and should be denied.

### 3.0      CONCLUSION

For all of the foregoing reasons, SnapMed respectfully submits that the Application for Prejudgment Remedy should be denied.

Dated:  September 15, 2023     By:/s/ Jonathan M. Shapiro
                                                                              Jonathan M. Shapiro (ct24075)
                                                                              Aeton Law Partners LLP
                                                                              311 Centerpoint Drive, Suite 105
                                                                              Middletown, Connecticut  06457
                                                                              Telephone:  (860) 724-2160
                                                                              Facsimile:  (860) 724-2161
                                                                              Email: jms@aetonlaw.com

*Attorneys for SnapMedTech, Inc.*

## CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                                              /s/ Jonathan M. Shapiro
                                                                              Jonathan M. Shapiro (ct24075)