UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br>v.<br><br>SNAPMEDTECH, INC.,<br><br>　　　　Defendant. | CIVIL ACTION NO.<br><br>3:22-CV-00780-OAW<br><br><br><br><br><br>SEPTEMBER 22, 2023 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF APPLICATION FOR PREJUDGMENT REMEDY AND MOTION FOR DISCLOSURE OF ASSETS**

Plaintiff National Liability & Fire Insurance Company ("NL&F") respectfully submits this Reply Memorandum in Further Support of its Application for Prejudgment Remedy and Motion for Disclosure of Assets.

**Introduction**

Defendant SnapMedTech, Inc. ("SnapMed") devotes its opposition brief largely to creating and attacking strawmen. SnapMed first reprises its motion to dismiss NL&F's non-contractual claims (misrepresentation and unfair trade practices).[1] SnapMed proclaims that "this action is nothing more than a simple breach of contract action based on SnapMed's alleged failure to pay certain premiums to NL&F." (ECF 16 at 1.) SnapMed's attacks on NL&F's non-contractual claims – even if they were meritorious (they are not)[2] – are entirely beside the point: NL&F's request for a prejudgment remedy relies exclusively on its claims for breach of contract and unpaid premiums due under the policies. Similarly, SnapMed asks the Court to apply the

---

[1] *See* ECF 62 at 2.

[2] *See* ECF 19.

standard for granting a temporary injunction, but NL&F has not requested an injunction. Thus, instead of addressing NL&F's actual motion, SnapMed challenges causes of action not at issue in NL&F's motion while it battles a request for injunctive relief that NL&F has not made. These arguments are not just irrelevant, they are revealing: they show that SnapMed has no legitimate basis to oppose NL&F's Application for Prejudgment Remedy (the "Application").

Finally, SnapMed proclaims that NL&F has provided no evidence to support "a fair and reasonable estimate of its damages." (ECF 62 ("Objection") at 5.) To the contrary, the supporting affidavit from NL&F's Director of Collections & Audit Premium explains exactly how NL&F calculated the premiums that SnapMed owes. Accordingly, NL&F has fully supported its request for a prejudgment remedy in the amount of $4,981,294.01 plus other ancillary relief.

I. ARGUMENT

    A. **NL&F's Application for Prejudgment Remedy Rests on the Damages Associated with NL&F's Breach of Contract Claims**

In its Objection, SnapMed rehashes its motion to dismiss by offering the same arguments about purported deficiencies in NL&F's claims for misrepresentation and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"). (ECF 62 at 1-2.) In its opposition to SnapMed's Motion to Dismiss, NL&F showed that SnapMed's attacks lack merit (*see* ECF 19). The outcome of that debate, whatever it may be, has no bearing on the instant Application. NL&F bases its Application exclusively on the damages it seeks to recover for SnapMed's breaches of contract for non-payment of premiums. (ECF 54 at 2, 7, 12-13). Thus, even if they were meritorious (which they are not), the arguments that SnapMed advances against NL&F's non-contractual claims do not detract from the Application under Connecticut law.

### B. SnapMed's Arguments about a Mandatory Injunction Requiring It To Bring Assets into Connecticut Are Inapposite

SnapMed argues that, because it is a non-resident of Connecticut and has no assets located in this state, satisfying any prejudgment remedy in this action would require SnapMed to bring assets into Connecticut. (ECF 62 at 2.) Accordingly, SnapMed contends that the Court should evaluate the Application based on the criteria for a temporary injunction instead of the lower probable cause standard for a prejudgment remedy application. (*Id.* at 2-3.) These arguments, however, are misdirected at a purported request for relief that appears nowhere in the Application.

SnapMed's arguments about injunctive relief rest initially on an unsupported "fact" – namely, that it has no assets in Connecticut. This "fact" appears exclusively in SnapMed's brief, not in any affidavit, declaration, or schedule of SnapMed's assets. *See*, *e.g.*, *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) (the Court will not credit unsupported statements in a party's brief). On its SnapNurse website, SnapMed proclaims: "We WILL go wherever we are needed."[3] Thus, even if SnapMed had no assets when it filed its Objection (including accounts receivable from Connecticut-based customers), that status may change.[4] In pursuing the disclosure of assets it seeks in connection with the Application, NL&F will determine whether SnapMed has assets in Connecticut. At this time, the assets that SnapMed may or may not have in Connecticut are not at issue in the Application, which seeks no order requiring SnapMed to move its assets anywhere.

---

[3] https://www.snapnurse.com/

[4] Although SnapMed claims that it has no assets in Connecticut, documents produced during discovery indicate that SnapMed sent nurses to clients located in Connecticut. Accordingly, SnapMed may have receivables that could be garnished from its Connecticut clients.

SnapMed's arguments about injunctive relief and the standard applicable to that relief are, at this stage, irrelevant and premature. NL&F has not requested a mandatory injunction requiring SnapMed to bring assets into Connecticut. Instead, NL&F seeks orders from the Court: (1) granting one or more of three prejudgment remedies (ECF 53 at 2); and (2) directing SnapMed to disclose the existence, location, and amount of all property in which SnapMed has an interest, and of all debts owing to SnapMed in order to secure the prejudgment remedy. (ECF 57 at 2.) Thus, SnapMed's arguments about the standards for injunctive relief are inapposite. *Mammoet USA NE Corp. v. Dick Corp.*, Docket No. 302-cv-2022, 2003 WL 22937724, at *1 (D. Conn. Oct. 9, 2003) (concluding that defendant's objection to prejudgment remedy ruling was premature when plaintiff never requested injunction or order requiring defendant to bring assets into state and Magistrate Judge did not purport to grant such injunction or order in ruling). Until SnapMed discloses its assets, it is not possible to determine whether and what assets SnapMed has outside of Connecticut, let alone whether it will be necessary to require SnapMed to bring assets into Connecticut to fully satisfy the attachment.

Lastly, even if the Application had sought the relief that SnapMed anticipates, NL&F would need to establish only probable cause to warrant an order requiring SnapMed to bring assets into Connecticut to satisfy any prejudgment remedy. "A federal district court can effectuate a PJR issued under Connecticut law by ordering parties over whom the court has in personam jurisdiction to take or refrain from taking certain actions. . . . The district court's authority to issue such ancillary orders is based on the court's in personam jurisdiction, which gives the court inherent equitable authority to order a party to do certain acts either within or outside the court's territorial jurisdiction." *Garnet Analytics, Inc. v. Diversified Solutions, Inc.*,

Docket No. 3:12-cv-716, 2013 WL 12286173, at *3 (D. Conn. July 16, 2013).  Moreover, this Court has held that:

> Ancillary orders issued by courts in effectuating prejudgment remedies may have the effect of injunctions, but such orders need not satisfy the requirements governing injunctions in Rule 65 of the Federal Rules of Civil Procedure.  On the contrary, federal courts routinely issue ancillary orders in conjunction with prejudgment remedies without finding a likelihood of success on the merits or requiring that plaintiff post a bond.  The standard for issuance of ancillary orders is no different from the standard for awarding the PJR that such orders help implement.  Under Connecticut state law, that standard is neither more nor less than probable cause.

*Id.* (citing *Hamma v. Gradco Systems, Inc.*, Docket Nos. B:89-437, 8:88-115, 1992 WL 336740, at *3 (D. Conn. Nov. 4, 1992)).  "To find otherwise would undermine the important policy of preventing a party from frustrating justice by removing assets from the court's territorial jurisdiction, and, importantly, would render a prejudgment remedy unavailable in cases with out of state defendants whose assets are located out of state." *Garnet Analytics*, 2013 WL 12286173, at *3.

Again, the issue of whether the Court may order SnapMed to bring assets into Connecticut is premature.  Likewise, the Court need not evaluate the parties' differing views about the standards that would apply to a request that NL&F has not made.  As for NL&F's actual application for a prejudgment remedy, the probable cause standard unquestionably applies.  Conn. Gen. Stat. § 52-278d(a); *N. Jonas & Co. v. Bros. Pool Enterprises, Inc.*, 638 F. Supp. 3d 193, 199 (D. Conn. 2022) (Spector, J.) ("The probable cause standard is less demanding than both the preponderance of the evidence and the likelihood of success standards.")  Accordingly, the potential necessity of an order requiring SnapMed to bring assets into Connecticut provides no basis to impose an inapplicable standard or to deny the Application.

### C. NL&F Provides Sufficient Evidentiary Support for the Application

Finally, SnapMed contends that NL&F has failed to provide any evidence supporting a fair and reasonable estimate of its damages. It claims that NL&F states only in the most cursory manner that NL&F, after conducting an audit, "determined" the amount that SnapMed owes it with no evidence to support this conclusory amount and no evidence or description of how NL&F arrived at this figure. (ECF 62 at 5.) SnapMed's argument is meritless.

NL&F provided sworn testimony explaining how it calculated the additional premiums that SnapMed owes it. Specifically, NL&F provided an affidavit from Wayne Vidzicki, an employee of NL&F who serves as Director of Collections & Audit Premium. (ECF 55.) Mr. Vidzicki attested that NL&F calculated the additional premiums for the two policies "by multiplying SnapMed's actual payroll for each state . . . by the appropriate rate for each employee classification code." (ECF 55 ¶ 33.) He also attested that NL&F's auditors independently verified the applicable class codes using the National Council on Compensation Insurance's Scopes Manual when conducting the audit. (*Id.* ¶¶ 34-35.) Consistent with this testimony, courts have recognized the basic math in calculating premiums for each employee: payroll times a published risk classification factor.[5] Moreover, in further support of its Application, NL&F will present at the hearing on its Application both live testimony from Mr.

---

[5] *See, e.g., United States v. Stevens*, 211 F.3d 1, 2 (2d Cir. 2000) (in a case involving alleged insurance fraud by the head of an employee staffing agency, the Court noted that workers' compensation "insurance premium is calculated primarily on the basis of the size of the employer's payroll, the degree of risk associated with the jobs held by the covered employees, and the employees' injury history"); *R & R Tree Serv., Inc. v. SAIF Corp.*, 251 Or. App. 735, 736 n.2, 286 P.3d 1232, 1233 (2012) (noting that risk classification "codes are contained and described in publications of the National Council of Compensation Insurance known as the Basic Manual and the Scopes Manual (2004)"); *Travelers Indem. Co. v. T & S Drywall Finishing, Inc.*, No. A-12-833, 2013 WL 5366358, at *6-7 (Neb. Ct. App. July 9, 2013) (explaining how the final premiums for workers' compensation coverage were determined by multiplying a rate, from an NCCI manual, times a premium basis in the form of payroll).

-7-

Vidzicki and documentary evidence relating to the audits on the two policies. This evidence will establish probable cause exists that SnapMed owes NL&F under the two policies at issue the principal amount of $4,528,449. (ECF 55 at 6-7.)

## II. CONCLUSION

For the foregoing reasons, NL&F respectfully requests that the Court grant its Application for Prejudgment Remedy and Motion for Disclosure of Assets.

**PLAINTIFF,**
**NATIONAL LIABILITY & FIRE**
**INSURANCE COMPANY**

By  */s Daniel L. FitzMaurice*
  Daniel L. FitzMaurice (ct05331)
  Catherine A. DeLanzo (ct31323)
  Day Pitney LLP
  242 Trumbull Street
  Hartford, CT 06103
  (860) 275-0100
  (860) 275-0343 (fax)
  dlfitzmaurice@daypitney.com
  cdelanzo@daypitney.com

  *Attorneys for National Liability & Fire*
  *Insurance Company*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                 */s/ Daniel L. FitzMaurice*
                 Daniel L. FitzMaurice